FILED
2021 SEP 30 AM 11:32
CLERK
U.S. DISTRICT COURT

J. Kahealani Kamauu
16060 Ventura Blvd Unit 110-801
Encino, California 91436
(808) 306-0082
kkamauu@roicompanies.com
*Plaintiff Pro Se*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J. KAHEALANI KAMAUU,<br><br>Plaintiff,<br><br>vs.<br><br>ARCHES ACADEMY, INC., a business entity; ANNETTE WARNICK, an individual; KERI WAHL, an individual; PAMELA PENROD, an individual; HEATHER SHALLENBERGER, an individual; and KAREN REEDER, an individual,<br><br>Defendants. | **COMPLAINT FOR DEFAMATION, INVASION OF PRIVACY, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>Case Number:<br><br>Judge: <br><br>Case: 2:21−cv−00572<br>Assigned To : Romero, Cecilia M.<br>Assign. Date : 9/30/2021<br>Description: Kamauu v Arches Academy et al |

Plaintiff, J. Kahealani Kamauu (hereinafter referred to as "Plaintiff" or "Mr. Kamauu"), proceeding in this matter *pro se*, hereby files this "Complaint for Defamation, Invasion of Privacy, and Intentional Infliction of Emotional Distress" (hereinafter referred to as this "Complaint") and complains against Defendants Arches Academy, Inc., Annette Warnick, Keri Wahl, Pamela Penrod, Heather Shallenberger, and Karen Reeder (hereinafter referred to jointly as "Defendants" and individually by their respective names), for making false damaging statements against Plaintiff, invading Plaintiff's privacy, and intentionally inflicting Plaintiff with emotional distress.

### PARTIES

1.      This is an action with damages of $3,500,000.00, exclusive of interest, costs, and attorney's fees.

2.      Plaintiff is an individual over the age of 18—who is, therefore, *sui juris*—who is a single, full-time father of two children; who resides in California; whose (i) good character was defamed by Defendants' (specifically, Annette Warnick's) false and libelous statements against Plaintiff, which have resulted, and will continue to result, in damages to Plaintiff; whose (ii) privacy was invaded by Defendants (specifically, Plaintiff claims False Light and Public Disclosure of Private Fact against Defendants); and who (iii) has suffered significant emotional distress intentionally inflicted by Defendants.

3.      Defendant Arches Academy, Inc., is a business entity—specifically, a charter school—operating in Orem, Utah. (Defendant Arches Academy, Inc., is hereinafter individually referred to as the "School").

4.      Defendant Annette Warnick is an individual over the age of 18—who is, therefore, *sui juris*—employed at Arches Academy, Inc., whose official title at Arches Academy, Inc., is Head of School.[1]

5.      Defendant Keri Wahl is an individual over the age of 18—who is, therefore, *sui juris*—employed at Arches Academy, Inc., whose official title at Arches Academy, Inc., is Co-Chair.[2]

6.      Defendant Pamela Penrod is an individual over the age of 18—who is, therefore, *sui juris*—employed at Arches Academy, Inc., whose official title at Arches Academy, Inc., is Chairman.[3]

---

[1] *See* Exhibit A (Form 990 from 2020) attached hereto, at 7.

[2] *See id.*

[3] *See id.*

7.      Defendant Heather Shallenberger is an individual over the age of 18—who is, therefore, *sui juris*—employed at Arches Academy, Inc., whose official title at Arches Academy, Inc., is Treasurer.[4]

8.      Defendant Karen Reeder is an individual over the age of 18—who is, therefore, *sui juris*—employed at Arches Academy, Inc., whose official title at Arches Academy, Inc., is Secretary.[5]

9.      Plaintiff reserves the right to include other additional defendants if said defendants come to light through the process of discovery or otherwise. Plaintiff intends to obtain from Defendants—whether through discovery, deposition, or otherwise—a complete list of all the members of the Board of Directors, and, in Plaintiff's discretion, name said additional members of the Board of Directors as defendants in this action.

## JURISDICTION AND VENUE

10.      Pursuant to 28 U.S. Code § 1332, this Court has subject matter jurisdiction in this case because Plaintiff is a citizen of the State of California, Defendants are citizens of the State of Utah, and the amount in controversy exceeds $75,000.00.

11.      Pursuant to 28 U.S. Code § 1391(b), the venue in this Court is proper because the events giving rise to this claim occurred within the boundaries of the District of Utah.

12.      Pursuant to Rule 26 of the Utah Rules of Civil Procedure, this case is a Tier III matter.

---

[4] *See id.*

[5] *See id.*

## GENERAL ALLEGATIONS

### *Ongoing Case Involving the Parties, and New Complaint*

13.     There exists an ongoing case involving Arches Academy, Inc., and J. Kahealani Kamauu, in the Fourth Judicial District Court, in and for Utah County, State of Utah, with the case number 200400447. (This ongoing case is referred to hereinafter as the "Utah Case"). In the Utah Case, Arches Academy, Inc., is the Plaintiff and J. Kahealani Kamauu is the Defendant. The Plaintiff in the Utah Case is suing the Defendant in the Utah Case for (i) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing; (ii) Defamation; (iii) Tortious Interference with Contractual Relations; and (iv) Temporary Restraining Order and Preliminary Injunction.

14.     In the Utah Case, Plaintiff, Arches Academy, Inc., has sought to inflate a small contract dispute into an enormous and inappropriate defamation case, and seek to charge Defendant in the Utah Case approximately $700,000.00 for leaving a negative review[6] on the Utah Case Plaintiff's Facebook page on or around September of 2019, and for sending an intemperate email[7] to the School, on January 11, 2020, which happened to include parents.

15.     Utah Case Plaintiff created a list of names of students (hereinafter referred to as "The List"), and made the claim that some students had left because of the Facebook review and email that was sent by Utah Case Defendant. However, Utah Case Plaintiff has not been able to adduce any evidence or witness testimony of any parents explaining that they withdrew their child from the School as a result of the statements made by Utah Case Defendant. Utah Case Defendant

---

[6] *See* Exhibit B (Plaintiff's negative Facebook review) attached hereto.

[7] *See* Exhibit C (Plaintiff's original email) attached hereto.

intends to subpoena every parent of the children named on The List in order to uncover their reason for withdrawing from the School.

16.     Plaintiff in the case at hand, Mr. Kamauu, now files this Complaint in the United States District Court because Plaintiff resides in California and Defendants reside in Utah, and so there exists diversity of citizenship in this case, and the amount in controversy pleaded for in this Complaint exceeds $75,000.00.

17.     Furthermore, Plaintiff opts to file his own Complaint so that he can sue the School entity itself as well as the board of directors individually, due to the recent events, separate from the Utah Case, that took place on August 30, 2021—specifically, the defamatory emails that were sent by Defendant Annette Warnick to the parents of the School's children—as well as the invasion of privacy and intentionally inflicted emotional distress suffered by Plaintiff. The issue at hand is a new issue, it is important to note, this case has no relation to the Utah case other than referencing it for history.

18.     The Board of Directors are named in this action because when the defamatory emails were sent out publicly against Plaintiff, the Board of Directors were on the email list and showed complete approval of the (i) numerous defamatory statements made against Plaintiff by Defendant Annette Warnick, the (ii) invasion of Plaintiff's privacy by Defendants, and the (iii) intentionally inflicted emotional distress by Defendants upon Plaintiff.

19.     None of the Board of Directors took any action to ameliorate the situation, but instead stood by Defendant Annette Warnick as she defamed Plaintiff twice, invaded Plaintiff's privacy twice, and intentionally inflicted emotional distress upon Plaintiff twice.

*Statement of Facts*

20.     Plaintiff had two sons previously enrolled at the School, whose names are Joshua Kamauu and Solomon Kamauu.

21.     Plaintiff's sons were enrolled in the School from the year 2012 through January 6, 2020.

22.     During the first half of the 2019 – 2020 school year, Plaintiff and Defendants were in disagreement as to the terms of the tuition payments, which were changed by the school in comparison to the prior seven years, and as to a Facebook review that Plaintiff made on the School's Facebook page regarding his personal experience with the School.

23.     On January 11, 2020, Plaintiff accidentally wrote an email to the entire parent body who had their children enrolled in the School, and the email included the situation between Plaintiff and Defendants. This accidental email to the parent body was due to no fault of Plaintiff, as he did a "reply all" from a previous email the principal wrote, which he expected only included the Board of Directors and the staff of the School, but instead included the parents as well. It is clear that the School included the emails of the parents, and Plaintiff had nothing to do with it. Plaintiff did not expect that the School would purposely share the private email addresses of other parents in the email messages. It was later found that there were parents included on the email message that the School sent. This was the last correspondence that Plaintiff had with the School directly.

24.     According to Defendants, after the email was sent, 44 parents opted out of having their children enroll for the upcoming 2020 – 2021 year. Defendants allege that the 44 parents leaving the School did so due to Plaintiff's email. Defendants provided The list to the Court as an exhibit to support their claim, which included the names of 65 school children, without parental

knowledge or consent; indeed, at least two parents objected to The List. However, Defendants cannot prove that the parents removed their children from the School due to Plaintiff's email, and in fact, a few parents wrote back in the email chain stating that their decision to remove their child(ren) from the School had nothing to do with Plaintiff's email. Through these court proceedings of this new case, Plaintiff intends to subpoena every parent to discover why they removed their child from the School. Obtaining each parent's testimony is essential to dismiss Defendants' allegations that parents decided to remove their children from the School due to Plaintiff's actions.

### *Facts Pertaining to Defamation Against Plaintiff*

25.     On August 30, 2021, a parent (hereinafter referred to as "Parent One") of a student attending the School wrote an email replying to all the recipients of the previously sent email by Plaintiff on January 11, 2020. Plaintiff and all the board members of the School were on the email. The email included The List previously mentioned as an attachment. The email was addressed to Defendants—specifically, Annette Warnick. Parent One questioned why a list of children's names were used in a court case without parental knowledge, as well as questioned the active lawsuit and educational resources of the School.[8]

26.     On August 30, 2021, another parent (hereinafter referred to as "Parent Two") of a former student responded to the email surprised that their child was on The List. Parent Two said, "I want to make it clear that our decision not to renew our child's enrollment at [the School] was

---

[8] *See* Exhibit D (Parent One's email) attached hereto.

100% about the impact of covid and had nothing to do with the emails sent by that parent last year."[9]

27.    On August 30, 2021, Defendants—specifically, Annette Warnick—responded to the parents and falsely accused Plaintiff of sending the email acting as Parent One, and made several defamatory and problematic statements against Plaintiff to a group of over 100 parents—to wit:

a.    "You are right—this email is completely inappropriate, and I apologize to you all that your emails were used for this *parent's spam purposes* to continue to try to *harm the school*" (emphasis added).[10]

b.    "If you want to know what the issue is really about, you can read the whole thread of the original email that the parent continues to include and has sent before to try *to harm the school*" (emphasis added).[11]

c.    "I am still saddened by the route this parent chose to take after *we worked with him for months (even years) to reconcile*" (emphasis added).[12]

d.    "In the end, we had to *protect the school from his threats*" (emphasis added).[13]

e.    **"**If you have any questions[,] you can also email or call me privately."[14]

---

[9] Exhibit E (Parent Two's email) attached hereto.

[10] Exhibit F (Annette Warnick's defamatory email 1) attached hereto.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

28.     Also on August 30, 2021, Defendants—specifically, Annette Warnick—sent an email message to all the parents a second time, again falsely accusing Plaintiff of sending the email acting as Parent One, and again made several defamatory and problematic statements against Plaintiff to a group of over 100 parents—to wit:

a.   "I apologize that you are all getting this. It is completely inappropriate, as all of this is deemed completely private by the court so that privacy laws are violated, *which this parent just broke by sending this*" (emphasis added).[15]

b.   "Opt outs to not continue in the 19-20 year were provided privately to counsel to show the possible result of *this parent's attempts in Jan 2020 to harm the school*" (emphasis added).[16]

c.   "Again, please do NOT 'reply to all' if you do have questions, as we want to end the sharing of this private info and *end the badgering of parents from this disgruntled parent*" (emphasis added).[17]

29.     August 30, 2021, another parent (hereinafter referred to as "Parent Three") of former students responded to the email alarmed that their children were on The List. Parent Three said, "I am extremely concerned and saw both of my kids names on the list. Could you provide more information? If in anyway the court was told we left on behalf of these emails that is a bold face lie and I would like to correct that. I have emails and record to prove this."[18]

---

[15] Exhibit G (Annette Warnick's defamatory email 2) attached hereto.

[16] *Id.*

[17] *Id.*

[18] Exhibit H (Parent Three's email) attached hereto.

30.     Plaintiff was included in these emails, and was astonished to be receiving such emails, as he had not responded to any of them on that day, nor did Plaintiff have any form of correspondences with the school since his last email of January 11, 2020.

31.     Plaintiff responded to the School's emails on the following day, in an effort to protect his character from the untrue and harsh accusations publicly made by Defendants against Plaintiff. As is clear by Plaintiff's email, he did not retaliate against the School or make any disparaging statements against the School in any manner.[19]

32.     In summary, as detailed in paragraphs 27 and 28 and their subparagraphs hereinabove, Defendants clearly committed defamation against Plaintiff. The counts of defamation are as follows: (i) three counts of accusing Plaintiff that he tried to harm the School; (ii) one count of accusing Plaintiff that he has made threats on the School; (iii) one count of accusing Plaintiff that he would not reconcile with the School; (iv) one count of accusing Plaintiff that he broke privacy laws; (v) one count of accusing Plaintiff that he spammed the parents' emails; (vi) one count of accusing Plaintiff that he badgered the parents; (vii) one count of accusing Plaintiff that he engaged in inappropriate behavior; and (viii) one count of accusing Plaintiff that he took wrongful actions. In total, there were ten counts of defamation made against Plaintiff.

33.     Plaintiff now makes this Complaint and requests that the damages alleged herein be granted as plead for in his Complaint.

### Facts Pertaining to Invasion of Privacy Against Plaintiff

34.     The defamatory statements made against Plaintiff showed Plaintiff in a false light. Defendants published information about Plaintiff in the form of the defamatory emails sent to the

---

[19] *See* Exhibit I (Plaintiff's response email to the School) attached hereto.

body of parents of students; the information portrayed Plaintiff in a false or misleading light—specifically, *inter alia*, making Plaintiff out to seem as someone who would harm or threaten the School; accusing Plaintiff of harming or threatening the school is highly offensive and embarrassing, and any reasonable person of ordinary sensibilities would find the statements highly offensive or embarrassing if said statements were made against them; and Defendants published the information with reckless disregard as to its offensiveness.

35.     Furthermore, Defendants publicly disclosed private facts of Plaintiff, such as his email address and the private dispute between Plaintiff and the School, and the matter publicized was of no legitimate concern to the public (the parent body), and the publicized information was highly offensive to Plaintiff and would be to any reasonable person who wishes to keep their private facts private and not publicized.

### *Facts Pertaining to the Intentional Infliction of Emotional Distress Against Plaintiff*

36.     Defendants acted intentionally and/or recklessly when they disclosed information about Plaintiff and his dispute with the School to the body of over 100 parents. The way that Defendants made Plaintiff seem to the body of parents constitutes conduct that was extreme and outrageous on the part of Defendants; indeed, publicizing the private affairs between Plaintiff and the School, as well as promulgating false and defamatory information against Plaintiff, constitutes extreme and outrageous conduct on the part of Defendants because Defendants, as a duly accredited, professional charter school who services several parents and students, had the heightened duty to treat Plaintiff with courtesy and respect and not publicize his private information, which duty they wholly and outrageously breached. Defendants' extreme and outrageous conduct in this regard has inflicted Plaintiff with severe emotional distress.

37.     Furthermore, Defendants have inflicted Plaintiff with severe emotional distress by stalking his Facebook profile numerous times (and ongoing), and by different members of the Board of Directors. Plaintiff has proof that Defendants have been stalking his Facebook profile, which proof is attached as an exhibit herewith.[20] The constant stalking of Plaintiff's Facebook profile by the School's Board of Directors has left Plaintiff with anxiety as well as other repercussions. Defendants have intentionally stalked Plaintiff's Facebook profile; stalking Plaintiff's Facebook profile constitutes extreme and outrageous conduct, considering the way that a professional, accredited charter school, with social influence and accolades, *should* act in contrast to the way the School has actually acted; and stalking Plaintiff's Facebook profile has caused him severe emotional distress.

### FIRST CAUSE OF ACTION
*Libel Per Se Against Plaintiff*

38.     Plaintiff incorporates paragraphs 1 through 36 as if fully set forth herein.

39.     To prove Libel Per Se, one must establish that the defamatory statements made are statements that "(i) relate to the person's business or profession to the persons' detriment; (ii) falsely claim that the person committed a crime of moral turpitude; (iii) imputes unchastity on the person; or (iv) claim that the person suffers from a loathsome disease."

40.     The defamatory statements made against Plaintiff constitute Libel Per Se because they (i) relate to Plaintiff's business or profession to Plaintiff's detriment, and they (ii) falsely claim that Plaintiff committed a crime of moral turpitude. These two elements are proven hereinbelow.

---

[20] *See* Exhibit J (Screenshots proving the School's stalking of Plaintiff's Facebook) attached hereto.

41.    On or about August 30, 2021, Defendants—specifically, Annette Warnick—published the following defamatory statements against Plaintiff:

    a.    "You are right—this email is completely inappropriate, and I apologize to you all that your emails were used for this *parent's spam purposes* to continue to try to *harm the school*" (emphasis added).[21]

    b.    "If you want to know what the issue is really about, you can read the whole thread of the original email that the parent continues to include and has sent before to try *to harm the school*" (emphasis added).[22]

    c.    "I am still saddened by the route this parent chose to take after *we worked with him for months (even years) to reconcile*" (emphasis added).[23]

    d.    "In the end, we had to *protect the school from his threats*" (emphasis added).[24]

    e.    **"If you have any questions[,] you can also email or call me privately."**[25]

    f.    "I apologize that you are all getting this. It is completely inappropriate, as all of this is deemed completely private by the court so that privacy laws are violated, *which this parent just broke by sending this*" (emphasis added).[26]

---

[21] Exhibit F.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Exhibit G.

g.  "Opt outs to not continue in the 19-20 year were provided privately to counsel to show the possible result of *this parent's attempts in Jan 2020 to harm the school*" (emphasis added).[27]

h.  "Again, please do NOT 'reply to all' if you do have questions, as we want to end the sharing of this private info and *end the badgering of parents from this disgruntled parent*" (emphasis added).[28]

42.  The foregoing defamatory statements were emailed to a large group of over 100 parents of students.

43.  These false and defamatory statements made against Plaintiff were done so with malice.

44.  It is evident that the false and defamatory statements were made with malice because they were done so after (and during) Defendants' conflict with Plaintiff, and the statements were made to a large body of parents. Indeed, Defendants knew or should have known that publishing false and defamatory statements against Plaintiff to a group of over 100 parents would result in damages to Plaintiff; despite these foreseeable damages to Plaintiff's character and reputation, Defendants nevertheless elected to tortiously defame Plaintiff's good name and character.

45.  Defendants sought to gain rapport with the group of parents by publishing untrue and defamatory statements against Plaintiff. Indeed, to save face after another parent exposed Defendants' wrongful actions against Plaintiff and his children, Defendants sought to gain favor

---

[27] *Id.*

[28] *Id.*

in the eyes of the parents by defaming Plaintiff to distract from the concerns of the parents about the School.

46.     It is obvious that Defendants' statements were false defamatory statements because all the statements were made in reference and reply to the email sent by Parent One. Defendants assumed that Plaintiff was Parent One and, indeed, even accused Plaintiff of being Parent One. However, Plaintiff is not Parent One, which can be easily proven, and Plaintiff never sent Parent One's email or had any connection to Parent One sending the email. Defendant would be unable to uncover any evidence that Plaintiff has any relation with Parent One. Thusly, considering that Defendants responded to Parent One while under the misbelief that Parent One was Plaintiff, all statements made by Defendants were false and defamatory, and were made publicly.

47.     Plaintiff has been significantly damaged by these false and defamatory statements because the statements subject Plaintiff to hatred, distrust, ridicule, contempt, and/or disgrace, and accuse Plaintiff of engaging in illegal and/or immoral behavior.

48.     Plaintiff has been damaged by these false statements because the statements injured Plaintiff in his profession and business.

49.     Plaintiff has been damaged by these false and defamatory statements because the statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of Plaintiff's lawful business.

50.     As stated in paragraph 31 hereinabove, there were ten counts of defamation against Plaintiff. The counts are listed hereinbelow with an explanation as to why the specific defamatory statements have caused harm, and will continue to cause harm, to Plaintiff. The counts and the harm caused are as follows:

a.  Three counts of accusing Plaintiff that he tried to harm the School:

    i.  Defendants' statement that Plaintiff tried to harm the School is a completely false statement. Plaintiff has never tried to harm the School. Plaintiff was not the one who sent Parent One's email, nor has Plaintiff had any communication with the School or parents of the School since January 11, 2020. Harming a school can be seen as a federal crime, and it is a serious accusation that could be construed immensely in public and be damaging to Plaintiff's reputation, his business, and all those connected.

b.  One count of accusing Plaintiff that he has made threats on the School:

    i.  Defendants' statement that Plaintiff made threats against the School is a completely false statement. Plaintiff has never made threats to the School. Plaintiff was not the one who sent Parent One's email, nor has Plaintiff had any communication with the School or parents of the School since January 11, 2020. Threatening a school can be seen as a federal crime, and it is a serious accusation that could be construed immensely in public and be damaging to Plaintiff's reputation, his business, and all those connected.

c.  One count of accusing Plaintiff that he would not reconcile with the School:

    i.  Accusing Plaintiff that he was unwilling to reconcile with the School is a completely false accusation—as Plaintiff has always been willing to reconcile with the School—and said false accusation is unduly, completely, and utterly damaging to Plaintiff's character and reputation.

d.  One count of accusing Plaintiff that he broke privacy laws:

       i.   Accusing Plaintiff that he broke privacy laws is a completely false accusation—as Plaintiff has never violated any privacy laws, considering that Plaintiff was not the one who sent the email by Parent One and has had no interaction with the School or with anyone regarding the School since January 11, 2020—and said false accusation is unduly and completely and utterly damaging to Plaintiff's character and reputation.

e.   One count of accusing Plaintiff that he spammed the parents' emails:

       i.   Accusing Plaintiff that he spammed parents' emails is a completely false accusation—as Plaintiff has never spammed parents' emails, as well as that Plaintiff was not the one who sent Parent One's email—and said false accusation is unduly, completely, and utterly damaging to Plaintiff's character and reputation.

f.   One count of accusing Plaintiff that he badgered the parents:

       i.   Accusing Plaintiff that he badgered parents is a completely false accusation—as Plaintiff has never badgered any parent—and said false accusation is unduly, completely, and utterly damaging to Plaintiff's character and reputation.

g.   One count of accusing Plaintiff that he engaged in inappropriate behavior:

       i.   Accusing Plaintiff that he engaged in inappropriate behavior is a completely false accusation—as Plaintiff was not the one who sent Parent One's email, and Plaintiff has never engaged in inappropriate behavior with respect to

Defendants, the School, or the parents—and said false accusation is unduly, completely, and utterly damaging to Plaintiff's character and reputation.

h.   One count of accusing Plaintiff that he took wrongful actions:

i.   Accusing Plaintiff that he took wrongful actions is a completely false accusation—as Plaintiff was not the one who sent Parent One's email, and Plaintiff has never taken wrongful actions with respect to Defendants, the School, or the parents—and said false accusation is unduly, completely, and utterly damaging to Plaintiff's character and reputation.

51.   It appears very clearly that Defendant Annette Warnick, along with the favor of the Board of Directors, purposefully decided to ruin Plaintiff's reputation with over 100 people—not just once but twice in the same day.

52.   It is one thing to endure defamation from a single individual, but to be subjected to such defamation publicly from a well-known private school, along with the Board of Directors, causes irreparable harm. The School claims on their website to be the best private school in Utah County since 2013. The combined accolades and resumes off all the Board of Directors are very powerful and well respected; the Board of Directors are seen as authority figures. Thusly, if they make claims against someone, others will believe them without question, which greatly aggravates the defamation against Plaintiff.

53.   Plaintiff never spoke to anyone about the School and never disparaged the School, so Defendants had no reason to attack Plaintiff's character; there was no reason to do anything to Plaintiff except move on.

54.     Plaintiff has not spoken to anyone at the School since January 11, 2020, so Defendants had no reason to attack Plaintiff's character—there was no reason to do anything to Plaintiff or even include him in the aforementioned email conversations.

55.     Defendants' disparaging, untrue, and libelous remarks against Plaintiff are severely aggravated by the fact that Plaintiff is Polynesian, since in the Polynesian culture one's reputation is worth more than family, wealth, religion, and supersedes all things. Plaintiff could not only lose his business, but he could lose all his associations with friends and even family based on his reputation. Therefore, the accusations made against Plaintiff are extremely serious and damaging to him on all levels.

**SECOND CAUSE OF ACTION**
*Invasion of Privacy: False Light*

56.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

57.     Pursuant to the Restatement (Second) of Torts § 652E, in a False Light claim, the plaintiff must prove the following elements:

a.   the defendant published some information about the plaintiff;

b.   the information must portray the plaintiff in a false or misleading light;

c.   the information is highly offensive or embarrassing to a reasonable person of ordinary sensibilities; and

d.   the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and its offensiveness, and the false light in which the other would be placed.

58.     In this case, it is clear that the defamatory statements made against Plaintiff showed Plaintiff in a false light. In satisfaction of the above elements, it is undisputable that (i) Defendants

published information about Plaintiff in the form of the defamatory emails sent to the body of parents of students; that (ii) the information portrayed Plaintiff in a false or misleading light—specifically, *inter alia*, making Plaintiff out to seem as someone who would harm or threaten the School; that (iii) accusing Plaintiff of harming or threatening the school is highly offensive and embarrassing to him, and any reasonable person of ordinary sensibilities would find the statements highly offensive or embarrassing if said statements were made against them, especially considering that the statements were made by Defendants whom have accolades and certifications and, therefore, their accusations carry more weight and authority than statements made by a layperson; and (iv) Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and its offensiveness; indeed, it is false that Plaintiff "harmed" or "threatened" the School in any way, and so the statements made by Defendants were done with the foreknowledge that the statements were false.

59.     As aforementioned, since the School and its Board of Directors carry prestige, accolades, and certifications, the defamatory statements made against Plaintiff to the body of over 100 parents, and the false light he was put under, are especially detrimental to Plaintiff and his reputation—which reputation, as referenced above in paragraph 54, is extremely important to Plaintiff especially because Plaintiff is Polynesian.

60.     Plaintiff was greatly aggrieved and damaged, and will continue to suffer grievances and damages, due to the false light that Defendants put him under.

61.     Where there exists a supported claim of defamation, there also exists, in most cases, a claim of false light. Therefore, Plaintiff's claim of false light against him is supported by the elements already proven in his defamation claim, and vise-versa.

62.     Therefore, Plaintiff has a valid claim of False Light to make against Defendants for the defamatory statements made against him.

## THIRD CAUSE OF ACTION
*Invasion of Privacy: Public Disclosure of Private Facts*

63.     Plaintiff incorporates paragraphs 1 through 61 as if fully set forth herein.

64.     Pursuant to the Restatement (Second) of Torts § 652D, in a Public Disclosure of Private Facts claim, the plaintiff must prove the following elements:

    a.   the matter publicized is of a kind that would be highly offensive to a reasonable person; and

    b.   the matter publicized is of no legitimate concern to the public.

65.     It is plainly clear that Defendants publicly disclosed private facts of Plaintiff, including, *inter alia*, his email address and the details of the private dispute between Plaintiff and the School.

66.     It is also plainly clear that the matter publicized was of no legitimate concern to the public (the parent body).

67.     Furthermore, this private information was publicized to a group of over 100 parents, causing great grievances to Plaintiff. Indeed, the group of parents had no business being involved in the private matters between Plaintiff and Defendants.

68.     The publicized information was highly offensive to Plaintiff, as the private information was publicized by the Board of Directors—who carry accolades, certifications, and credentials—and so the information publicized by them carries more weight than if the information was publicized by a layperson. Therefore, the private information of Plaintiff disclosed by

Defendants was more damaging to Plaintiff and his reputation than if the information was publicized by a layperson.

69.     And, finally, any reasonable person in Plaintiff's shoes would find the publication of his or her private affairs to a group of over 100 parents highly offensive and damaging, especially because, again, Defendants carry accolades, certifications, credentials, accreditations, and have influence with the public, and so their statements carry more weight and authority than a layperson's statements.

70.     Therefore, Plaintiff has a valid claim of Public Disclosure of Private Facts to make against Defendants for the undue and tortious disclosure of private information of Plaintiff that Defendants made to a group of over 100 parents.

**FOURTH CAUSE OF ACTION**
*Intentional Infliction of Emotional Distress*

71.     Plaintiff incorporates paragraphs 1 through 69 as if fully set forth herein.

72.     Pursuant to the Restatement (Second) of Torts § 46, in an Intentional Infliction of Emotional Distress claim, the plaintiff must prove the following elements:

     a.  the defendant's conduct must be outrageous;

     b.  the defendant must act intentionally or recklessly;

     c.  there must be actual suffering of severe or extreme emotional distress; and

     d.  the defendant's conduct must be the actual and proximate cause of severe emotional distress to the plaintiff.

73.     It is clear by Defendants' conduct that they purposefully included Plaintiff on the emails sent to and from the School as a bullying and intimidation tactic against Plaintiff, in order to bully and intimidate Plaintiff into complying with Defendants' wishes. Not only were

defamatory comments made about Plaintiff, but Plaintiff was included in those defamatory emails and had to see the names of all those it was sent to. Defendants' clearly intended, by including the emails of the parents in their emails to Plaintiff, to bully and intimidate Plaintiff publicly in front of others.

74.     As stated in paragraph 36 hereinabove, Defendants have intentionally stalked Plaintiff's Facebook profile on several and ongoing occasions, by different members of the Board of Directors; stalking Plaintiff's Facebook profile constitutes extreme and outrageous conduct, considering the way that a professional, accredited charter school *should* act in contrast to the way the School has actually acted.

75.     Furthermore, considering the School's high social status, it is absolutely outrageous that they chose to defame Plaintiff to a group of over 100 parents. Indeed, Defendants' status makes it outrageous that they have defamed and harmed Plaintiff, because the damage they caused to Plaintiff was significantly more severe than if they did not have a high social status. It is outrageous how irresponsibly and tortiously Defendants acted given their social status, accolades, accreditations, influence with the public, etc.

76.     It is clear that Defendants acted intentionally when they defamed Plaintiff, when they put Plaintiff in a false light, when they disclosed Plaintiff's private affairs with the School, and when the Board of Directors decided to stalk Plaintiff's Facebook profile (which they continue to do). Defendants' intentional and outrageous conduct is plain and clear in this case, and said conduct has irreparably and severely damaged Plaintiff's reputation in the community. Again, given Defendants influence with the public, Defendants should have acted responsibly and refrained from injuring Plaintiff as they did.

77.     Plaintiff has actually suffered extreme emotional distress due to Defendants actions. Plaintiff has been harmed severely by Defendants and their continuous stalking of his personal life as well as the disparaging comments made by them to the public. The irreparable harm to Plaintiff's reputation has caused him severe emotional injury.

78.     Plaintiff's entire work is based around the relationships he has with others, and his sole income is from his investments with others. The defamatory comments made against Plaintiff by Defendants, the false light they put him under to the public, the private affairs of Plaintiff that Defendants disclosed, and the constant stalking of Plaintiff's Facebook stories by the Board of Directors, have left Plaintiff with severe anxiety and other severe emotional repercussions. Plaintiff has found it difficult to focus on work. Plaintiff is extremely concerned with how people now view him after the disparaging remarks made by Defendants. Plaintiff was looking to begin a new investment in Utah county, but now he feels that he lacks the confidence of others because of the disparaging comments Defendants made about him. Defendants' actions have put Plaintiff's entire income in jeopardy, inflicting Plaintiff with severe and unfair emotional damage.

79.     For an entire organization to attack an individual, and purposely try to ruin that individual's name in public, is completely unacceptable and warrants the highest level of recourse available. Defendants, constituting an organization with prestige and influence in the public, have attacked Plaintiff, an individual, and have purposefully tried to ruin Plaintiff's name by making defamatory remarks against Plaintiff to the group of over 100 parents, putting Plaintiff under a false light to the group of over 100 parents, and publicizing Plaintiff's public affairs with the School. Plaintiff's damages, therefore, warrant the highest level of recourse available.

80.    Defendants' conduct is the actual cause of Plaintiff's emotional injuries because, **but for** Defendants' outrageous conduct in defaming Plaintiff, stalking his Facebook, putting him under a false light to the public, and publicizing his private affairs with the School, Plaintiff would not have suffered the severe emotional injuries, as well as the other injuries, he has suffered.

81.    Furthermore, Defendants' conduct is the proximate cause of Plaintiff's emotional injuries and other injuries because the risk of harm against Plaintiff associated with Defendants' conduct was plainly **foreseeable** and **preventable**. Indeed, Defendants were aware, or should have been aware, of the harm their conduct would cause upon Plaintiff, but they went forward with that course of conduct regardless of the foreseeable and preventable damages to Plaintiff and the high likelihood that Plaintiff would suffer said damages.

## CONCLUSION

In conclusion, it is clear that Plaintiff has suffered significant damages due to Defendants' course of conduct, as has heretofore been explained. Defendants, as a prestigious organization with accolades, accreditations, and influence in the public, should have refrained from defaming Plaintiff, putting him under a false light to the public, publicizing his private affairs with the School, and intentionally causing him severe emotional injuries as a result of their actions. Indeed, Defendants were aware, or should have been aware, of the severe consequences their actions would have in Plaintiff's life. Indeed, it is not fair that an entire organization disparage an individual and ruin their reputation; Plaintiff did not deserve the severe damages caused to him by Defendants, and so he is entitled to relief from the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, J. Kahealani Kamauu, prays for judgment against Defendants, as follows:

A.  awarding Plaintiff all compensatory damages, including consequential and incidental damages, as a result of Defendants' wrongdoing, in an amount to be proven at trial and determined by the trier of fact, but totaling no less than $3,500,000.00;

B.  awarding Plaintiff punitive damages against Defendants in an amount to be proven at trial and determined by the trier of fact;

C.  awarding Plaintiff attorney's fees, legal fees, and costs;

D.  for a restraining order and a preliminary injunction restraining and enjoining Defendants from (i) making any further defamatory statements against Plaintiff, from (ii) stalking Plaintiff's Facebook page, and from (iii) wrongfully causing further damage to Plaintiffs' character and business relationships;

E.  requiring Defendants to make a public retraction of the false and libelous statements; and

F.  awarding such further relief as the Court deems just and proper under the circumstances.

DATED September 29, 2021.

/s/ J. Kahealani Kamauu
J Kahealani Kamauu,
*Plaintiff Pro Se*